[S. F. No. 4594.   Department Two.—May 28, 1908.]

## CITY AND COUNTY OF SAN FRANCISCO, Respondent, v. YANKEE BROWN et al., Appellants.

JUDGMENTS—VACATION OF JUDGMENT OTHER THAN ONE RENDERED— ERROR OF CLERK — COURT'S POWER OF CORRECTION AFTER SIX MONTHS.—Where the clerk of the court, at the request of defendants' attorney, entered a judgment different from that rendered by the court, the error is clerical, and not judicial; and the court has power to vacate it, on plaintiff's motion, at any time, and has inherent power to correct it so as to conform to the judgment rendered, notwithstanding the lapse of six months, which period has no application to the case.

EJECTMENT—JUDGMENT OF NONSUIT—DISMISSAL—TITLE NOT DETERMINED—JUDGMENT NO BAR TO SECOND ACTION.—A judgment of non-

suit rendered in an action of ejectment, on motion of the defendants, decides nothing on the merits of the case, and determines nothing as to the title of plaintiff, or defendants; but it simply operates as a dismissal of the case for want of sufficient proof as to the title of the plaintiff, and is not a bar to a subsequent action by the plaintiff upon the same cause of action.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. J. C. B. Hebbard, Judge.

The facts are stated in the opinion of the court.

Robert Ash, for Appellants.

Wm. G. Burke, City Attorney, for Respondent.

LORIGAN, J.—This is an appeal from an order setting aside and vacating a final judgment. The action was commenced in the district court of the fourth judicial district on the seventeenth day of April, 1868, and was in ejectment, to recover possession of certain premises in the city and county of San Francisco, of which plaintiff alleged it was the owner and entitled to the possession, and had been dispossessed by the defendants, and which property, the record on this appeal shows, was claimed to be a portion of Oregon Street. In due time Charles P. Brown and Andrew V. Smith, impleaded with the other defendants under fictitious names, filed their answers, in which they denied the allegations of the complaint, and set up as separate defenses the statute of limitations and adverse possession for the requisite statutory period. The cause came on regularly for trial without a jury on the sixteenth day of November, 1870, and plaintiff resting after having introduced certain evidence, the defendants moved for a judgment of nonsuit. The minute orders of the court with reference to the motion and disposition of it were, that certain named "witnesses for plaintiff were sworn and examined, and plaintiff having rested his case, defendants moved for a judgment of nonsuit, which motion was taken under advisement by the court." This is from the minutes of the trial of November 16, 1870. On November 19, 1870, the following minute order was made by the court: "The motion on behalf of defendants for a judgment of nonsuit herein having been fully considered by the court, it is ordered

that the said motion be and the same is hereby granted, and that a judgment of nonsuit be entered therein in favor of said defendants and against the plaintiff."

No further proceedings seem to have been taken in the case until the thirty-first day of March, 1905, when Robert Ash, Esq., attorney of record for appellant herein, without any stipulation or order of substitution as attorney for said defendant Brown, wrote in the request book kept in the county clerk's office the following: "Enter judgment as per memorandum filed. Robert Ash, Attorney." Thereafter, On April 4, 1905, the clerk, without any order or direction of the superior court, entered judgment in the cause pursuant to the directions of said attorney who had requested it.

The judgment recited that the cause having come on regularly to be heard on the nineteenth day of November, 1870, "the parties thereupon introduced oral and documentary evidence, and there was thereupon put in issue between the respective plaintiff and said defendant C. P. Brown the title and possession of said parties respectively in and to" the land described in the complaint. It further recites that "after said evidence had been closed, defendants moved for a nonsuit on the ground that plaintiff had no title to said lot of land, which the court had granted, and rendered judgment in favor of said defendants and against said plaintiff for the possession of the . . . described premises." The judgment then "ordered, adjudged and decreed that the defendant C. P. Brown is the owner and entitled to the possession of said lot of land described and entitled to recover his costs herein."

On November 17, 1905, the said attorney of plaintiff, pursuant to notice regularly served on said Robert Ash, as attorney for defendants, moved in the superior court of the city and county of San Francisco, where such judgment had been entered, for an order vacating the judgment as entered in said action of April 4, 1905, and for a further order directing that judgment be entered in conformity with the decree of the district court rendered in said action November 19, 1870, on the ground that the judgment as entered on April 4, 1905, did not conform to the decision of the court rendered on November 19, 1870. After hearing the court made the order as prayed for to the extent of vacating the judgment of April 4, 1905.

The only question involved on this appeal is as to the juris-
diction of the superior court to make the order vacating the
judgment.

It is insisted by appellant against such jurisdiction, 1. That
the court had no power after the expiration of six months
from the entry of the judgment, April 4, 1905, to vacate it on
motion; and, 2. That if there was error in the judgment as
entered it was judicial error and not clerical error or mis-
prision, and, hence, could not be corrected by motion to vacate
the judgment, but only on motion for a new trial or on appeal.

Both propositions of appellant in so far as they embrace
rules of law are correct, but we are satisfied that neither of
them has application in the matter under consideration.

The rule that a motion to vacate a judgment cannot be
made after six months from its entry has application only
where the judgment which it is sought to vacate is the judg-
ment which was actually rendered by the court. But here
it is apparent that the judgment which was entered was not
the judgment rendered by the court. The judgment as ren-
dered was one of nonsuit only, the effect of which was simply
to declare that the plaintiff had failed to make proof of ma-
terial allegations necessary to sustain his cause of action. It
decided nothing on the merits of the controversy, and neces-
sarily could not, as its effect was to virtually put the plaintiff
out of court. It operated simply as a dismissal of the case.
(*Wood* v. *Ramond*, 42 Cal. 643.)

And a nonsuit suffered for any cause is not a bar to a suit
subsequently brought on the same cause of action. (*Merritt
v. Campbell*, 47 Cal. 543.)

This being the law, a nonsuit granted in an action of eject-
ment determines nothing save that the plaintiff has not proven
his case as alleged. The plaintiff in such an action must
recover on the strength of his own title, and failing in proof
of his title is subject to be nonsuited, but the presence or
absence of title in the defendants does not enter at all in the
determination as to whether such nonsuit should be granted,
and is, of course, not considered or determined in the matter
of the nonsuit. The defendant in an ejectment suit may have
no title whatever or right to possession of the property, but
this is entirely immaterial if the plaintiff proves no title or
right of possession. He can only prevail by showing it in

himself, and it is immaterial for all purposes if he fails in this respect whether defendant has title or not.

Now, applying these principles to the matter under consideration. It may be that in fact the city of San Francisco had a perfect legal title and right to the possession of the premises in controversy, but may have failed on the trial in making the necessary proof in that respect. The nonsuit did not determine that it had no such title or right, but only that if it had it had not proven it, and went out of court for that reason. This was, however, by no means an adjudication that the title to the premises was in Brown, for a judgment of nonsuit could be entirely proper and Brown have no shadow or pretense of title. If it could be held that the nonsuit was determinative of title in Brown, then it would be necessarily *res adjudicata* on the subject of title, and would be a bar to the maintenance by plaintiff of another action of ejectment for the recovery of the property. This, however, could not be, because it is fundamental that the doctrine of *res adjudicata* has no application to judgments of nonsuit. (*Merritt* v. *Campbell*, 47 Cal. 543.) Or, again, as far as the necessity of proof of title on the part of plaintiff is concerned, it might have been that the nonsuit was properly granted because the title appeared from the proofs of plaintiff to be in a stranger to the action, or in one of the other defendants who had appeared in the case, either Eliza Brown or A. V. Smith.

It is thus apparent that the judgment of nonsuit in an action of ejectment determines nothing except that the plaintiff has not proven his right to recover as alleged, and his action is dismissed and he is sent out of court for such failure. It determines nothing whatever as to title, nor is it conclusive in any respect upon that question.

This being the effect of the order for a nonsuit by the district court on November 19, 1870, the judgment entered thereon by the clerk at the direction of Attorney Ash on April 4, 1905, adjudicating that the appellant Brown was the owner and entitled to the possession of the premises described in the complaint was essentially a different and distinct judgment from that which was rendered by the district court, and was entered unauthorized.

Concluding, then, that the judgment entered was different from that which was rendered, brings us to a consideration of

the second contention of appellant,—namely, that if there was any error in entering the judgment it was not a clerical error or misprision, but a judicial error which was subject to correction on motion for a new trial, or on appeal, only.

We cannot perceive how any claim that the entry of the judgment was judicial is maintainable. There was no error in the judgment as rendered. The error was in entering a different judgment from that which the court had ordered. The entry of the judgment was a matter with which the court had nothing to do. It was a ministerial act to be performed by the clerk, and his duty was to enter only such judgment as the court had rendered.

Counsel for appellant cites several cases which he claims support his contention that the entry was judicial error. The only ones which have any relevancy to the point are *Egan v. Egan,* 90 Cal. 21, [27 Pac. 22] ; *First Nat. Bank of Fresno v. Dusy,* 110 Cal. 69, [42 Pac. 476] ; and *Byrne v. Hoag,* 116 Cal. 1, [47 Pac. 775]. An examination of these cases shows that they are not authority for the proposition he advances, but inferentially are authorities against him. In all those cases the judgments were entered exactly as the court had ordered them, and the language used in *Byrne v. Hoag,* 116 Cal. 1, [47 Pac. 775], "the judgment was entered by the clerk exactly as the court ordered it to be entered in the surest way in which the judge could express his intention" is applicable to them all. Certainly such authorities can have no bearing where it is clear that the clerk entered a judgment entirely different from what the court had rendered.

This is what the clerk did here, and it is clear from the authorities that in entering judgment the clerk acts in a purely ministerial capacity and that no judicial function is exercised. On this point it is said in *Kelly v. Van Austin,* 17 Cal. 565: "The clerk in entering judgments upon default acts in a mere ministerial capacity. He exercises no judicial functions. The statute authorizes the judgment, and the clerk is only an agent by whom it is written out and placed among the records of the court. He must, therefore, conform strictly to the provisions of the statute, or his proceedings will be without any binding force." In *Crim v. Kessing,* 89 Cal. 488, [23 Am. St. Rep. 491, 26 Pac. 1074], it was held: "The entry of a judgment after it has been rendered by the court is but the

ministerial act of the clerk. The judgment, when entered, becomes the record of what the court has determined, and then becomes as binding upon the parties as if entered immediately upon its rendition. 'The rendition of a judgment is a judicial act; its entry upon the record is merely ministerial.' (Freeman on Judgments, sec. 38.)"

As the court has nothing to do with the entry of a judgment, that being a duty devolving solely on the clerk of the court, it follows under the authorities cited that the act of the clerk in the matter at bar in entering a judgment at the request of the attorney different from that which had been rendered by the court was not a judicial error, but strictly a clerical one.

This being true, the rule is unquestioned that a court of record has the inherent right and power at any time to correct or amend its judgment which has been entered as the result of clerical error or misprision in order to make it conform to the judgment which was actually rendered by the court, and so as to speak the truth in that respect.

" 'A judgment is the decision or sentence of the law, given by a court or competent tribunal, as the result of proceedings instituted therein for the redress of an injury.' To be valid, it must be given by a competent judge or court, at a time and place appointed by law, and in the form it requires, and is usually entered up by the clerk, under the supervision of the court. Our statute, like that of many states, has introduced a new rule, adapted to the convenience of the public, and pronounces a judgment of law upon a certain state of facts, which, when duly authenticated, authorizes the clerk to enter judgment thereon. If a judgment is pronounced by a court having jurisdiction, no matter how irregular it may be, it must stand until set aside or reversed on appeal; but when entered by a mere ministerial officer, without authority of law, it is wholly void. (*Stearns* v. *Aguirre,* 7 Cal. 449.)

"Clerical errors and misprisions may occur in respect of entries of judgments, which it is competent for the court to order amended or supplied; and this may be done even though the term when the error or mistake happened may have passed, provided the party moving proceeds with due diligence." (*Hageler* v. *Henckell,* 27 Cal. 491.)

"It is well settled that clerical errors in a judgment, where they show by the record, may be corrected at any time so as to make the judgment entry correspond with the judgment rendered. (*Swain* v. *Naglee,* 19 Cal. 127; Freeman on Judgments, secs. 70, 71.) And this may be done even after an appeal and affirmance of the judgment. (*Rousset* v. *Boyle,* 45 Cal. 64.)" (*Dreyfuss* v. *Tompkins,* 67 Cal. 340, [7 Pac. 732].)

"Courts have the power at all times to allow amendments to judgments for the purpose of having the judgment as entered express that which was rendered, so that the record shall contain the actual decision of the court; and such amendment can be made after the expiration of six months from the entry of the judgment. Where the clerk fails to enter judgment as it was pronounced, the court has always the power to correct the matter and order the proper entry to be made." (*Egan* v. *Egan,* 90 Cal. 15, [27 Pac. 22].)

"Every court of record has the inherent right and power to cause its acts and proceedings to be correctly set forth in its records. The clerk is but an instrument and assistant of the court, whose duty it is to make a correct memorial of its orders and directions; and, whenever it is properly brought to the knowledge of the court that the record made by the clerk does not correctly show the order or direction which was in fact made by the court at the time it was given, the authority of the court to cause its records to be corrected in accordance with the facts is undoubted. (*Matter of Wright,* 134 U. S. 136, [10 Sup. Ct. 487]; *Balch* v. *Shaw,* 7 Cush. 282; *Fay* v. *Wenzell,* 8 Cush. 315; *Frink* v. *Frink,* 43 N. H. 508, [80 Am. Dec. 189, 82 Am. Dec. 172]; *Crim* v. *Kessing,* 89 Cal. 486, [23 Am. St. Rep. 491, 26 Pac. 1074].)" *Kaufman* v. *Shain,* 111 Cal. 19, [52 Am. St. Rep. 139, 43 Pac. 393].)

"A court may at any time amend a judgment where the record discloses that the entry on the minutes does not correctly give what was the judgment of the court. (*Morrison* v. *Dapman,* 3 Cal. 255.)" (*Scamman* v. *Bonslett,* 118 Cal. 97, [62 Am. St. Rep. 226, 50 Pac. 272].)

These are quotations from but a few of a long line of authorities in this state uniformly sustaining the doctrine which these quotations announce, and under them it is quite evident that the judgment entered by the clerk on April 4, 1905, was not

the judgment rendered by the court on November 19, 1870. It was clerical error on the part of the clerk to so enter a different judgment, and the court was authorized and had jurisdiction on motion of plaintiff to set it aside in order that a judgment conformable to that which was in fact ordered might be actually entered.

The order appealed from is affirmed.

Henshaw, J., and McFarland, J., concurred.