[Civ. No. 19014.   Second Dist., Div. Two.   July 25, 1952.]

WALTER P. THOMSON, Respondent, v. L. C. RONEY & COMPANY, INC. (a Corporation) et al., Defendants; SOUTHWESTERN DEVELOPMENT COMPANY (a Corporation), Appellant.

Franklin W. Peck for Appellant.

Freda B. Walbrecht and Holbrook & Tarr for Respondent.

FOX, J.—Southwestern Development Company, a corporation, appeals from an order adding its name as a judgment debtor to a final judgment previously rendered against the initial defendant, L. C. Roney, Inc., a corporation.

In July, 1949, plaintiff commenced an action against defendant L. C. Roney, Inc., and others for the recovery of money arising out of certain business transactions dating from July, 1946. Judgment in plaintiff's favor for $6,002.26, plus interest and costs, was entered against L. C. Roney, Inc., on March 23, 1951. No appeal was taken and the judgment became final.

Thereafter plaintiff obtained an order for examination of L. C. Roney, Inc., as a judgment debtor pursuant to which Edward D. Neuhoff, secretary of the judgment debtor corporation, was examined on June 8, 1951. Mr. Neuhoff's examination disclosed the following: all the outstanding shares of defendant L. C. Roney, Inc., had been owned by the Southwestern Development Company since December, 1946; A. B. Ruddock and Edward D. Neuhoff were respectively president and secretary of both corporations; the members of the board of directors of both corporations were substantially identical; on August 31, 1948, L. C. Roney, Inc., had transferred all its assets to the appellant Southwestern Development Company, which, on the following day, filed a certificate that it was

conducting business under the fictitious firm name of L. C. Roney, Inc. On the basis of this information, plaintiff filed with the trial court a petition for an order to show cause why the court should not add to the files and records of the action previously tried, and to the judgment therein, the name of appellant as a judgment debtor. Appellant filed petitions for a writ of prohibition in the District Court of Appeal and the Supreme Court upon the ground that the trial court lacked jurisdiction of the subject matter and was without power under the circumstances to modify its final judgment. Both petitions were denied.

Plaintiff's order to show cause was heard on November 19, 1951, at which time plaintiff introduced a transcript of the testimony given by Mr. Neuhoff on June 8, 1951, and additional testimony was received. The evidence showed that on November 20, 1945, appellant Southwestern Development Company purchased 80 per cent of the stock (2,000 shares) of L. C. Roney, Inc., and acquired the remaining 20 per cent (500 shares) on December 5, 1946, all of which it still retains. Appellant is a family corporation with 9,000 shares of stock outstanding with a par value of $100, of which A. B. Ruddock owned 4,999 shares, Billings Kirk Ruddock and Merritt Kirk Ruddock owned 2,000 shares each, and a single share was owned by Margaret Kirk Ruddock. The 500 shares of stock in L. C. Roney, Inc., acquired in December, 1946, were purchased by A. B. Ruddock and assigned to the Southwestern Development Company, although no authorization for the transaction appears in the minutes of the Southwestern Development Company. At the time of the original trial the directors of the Southwestern Development Company were A. B. Ruddock, Billings K. Ruddock and Edward D. Neuhoff, and its officers consisted of A. B. Ruddock, president, Billings K. Ruddock, vice president, and Edward D. Neuhoff, secretary and treasurer. At the time of the transfer of assets by L. C. Roney, Inc., to the Southwestern Development Company on August 31, 1948, A. B. Ruddock, R. N. Jones and Edward D. Neuhoff served as officers and directors of the Southwestern Development Company and occupied the same positions as officers and directors of L. C. Roney, Inc. -

Subsequent to the time that Southwestern Development Company became the majority shareholder in L. C. Roney, Inc., it made loans to L. C. Roney, Inc., of large sums of money to enable the junior corporation to carry on its business operations as manufacturers of liquefied petroleum gas

equipment. The minute book of L. C. Roney, Inc., disclosed resolutions were passed in 1946 authorizing the borrowing of $348,000 from the Southwestern Development Company. However, the evidence does not disclose the existence of any resolution in the minutes of meetings by the directors of the Southwestern Development Company authorizing the making of loans to L. C. Roney, Inc. On August 9, 1948, an agreement of sale was executed between L. C. Roney, Inc., as seller and the Southwestern Development Company as buyer wherein it is recited that in partial cancellation of an indebtedness to buyer of $577,652.20 (plus interest of $31,-275.14), which sums were advanced by buyer to seller for operating expenses and in consideration of buyer's agreement to discharge an indebtedness of $130,000 owed by L. C. Roney, Inc., to the Security-First National Bank of Los Angeles, L. C. Roney, Inc., agreed to sell all of its assets to the Southwestern Development Company as of August 31, 1948. The value of the seller's assets was listed at $705,000. This agreement was signed by A. B. Ruddock in behalf of the Southwestern Development Company and by R. N. Jones and Edward D. Neuhoff for L. C. Roney, Inc. A notice of intended sale in compliance with section 3440 of the Civil Code was published on August 13, 1948, and the transfer of assets was consummated on August 31, 1948. On September 1, 1948, Southwestern Development Company filed a certificate that it was conducting a business under the fictitious name of L. C. Roney, Inc., and it has continued to operate the business so acquired from L. C. Roney, Inc., under that name as a division of its own operations. This phase of the Southwestern Development Company's operations was carried on at the same address as before, using stationery carrying the letterhead of L. C. Roney, Inc., and selling equipment and manufacturing parts bearing the stamp "L. C. Roney, Inc." Mr. Neuhoff testified that the principal reason for the adoption of the fictitious name L. C. Roney, Inc., was to facilitate the use of the operating supplies and finished parts of the transferred business, which in large part bore the insignia of the predecessor corporation and which would entail substantial expense to change.

Plaintiff, who resided in Texas during the period involved in this action, had no actual notice of the transfer of assets or the filing of a certificate to do business under such fictitious name. Plaintiff had no business relations with L. C. Roney, Inc., after the transfer of the assets, although in all corres-

pondence between the parties, L. C. Roney, Inc., used letter-head stationery identical · with that used by Southwestern Development Company doing business as L. C. Roney, Inc., a fictitious firm name. On June 30, 1949, L. C. Roney, Inc., through R. N. Jones and Edward D. Neuhoff, filed with the Secretary of State a certificate of election to wind up and dissolve, with the written consent of the holder of all its stock, Southwestern Development Company, given through its officers R. N. Jones and Edward D. Neuhoff. When plain-tiff instituted its action on July 27, 1949, against defendant corporation, its answer was filed by Mr. Neuhoff, who was also its attorney in addition to being an officer and director of both defendant and appellant and the answer was verified by A. B. Ruddock, president of both defendant and appellant corporations. Mr. Neuhoff testified that he was under a gen-eral retainer as counsel for the Southwestern Development Company, and that he expected the costs of the litigation would be subsidized by Southwestern Development Company. It was on the basis of these facts, none of which were before the court in the original trial, that the order of November 29, 1951, was made adding appellant's name to the judgment previously entered.

In challenging the validity of the trial court's order amend-ing its earlier judgment, appellant urges: (1) the trial court acted in excess of its jurisdiction in adding the name of the Southwestern Development Company to a final judgment, and (2) no showing was made that would warrant a disregard of the separate corporate existence of L. C. Roney, Inc., and support a finding that it was the *alter ego* of appellant. We are unable to agree with these contentions.

The rule is clearly established that the power of a court to correct clerical errors in a final judgment may not be used as a springboard to rectify its judicial errors. (*Bowman* v. *Bowman*, 29 Cal.2d 808 [178 P.2d 751, 170 A.L.R. 246]; *Stevens* v. *Superior Court*, 7 Cal.2d 110 [59 P.2d 988]; *Barkelew* v. *Barkelew*, 73 Cal.App.2d 76 [166 P.2d 57].) But that principle is not here involved. The order here under consideration does not effect an enlargement of the original judgment nor is it a modification thereof to correct a supposed error of law. It is simply an amendment whose purpose is to designate the real name of the judgment debtor. (*Mirabito* v. *San Francisco Dairy Co.*, 8 Cal.App.2d 54 [47 P.2d 530].) In *Mirabito* v. *San Francisco Dairy Co.*, 1 Cal.2d 400 [35 P.2d 513], (decided previous to the case last cited,

which is an outgrowth of the same litigation), plaintiff recovered a judgment against a corporation known as the San Francisco Dairy Company for personal injuries sustained as a result of negligence by an employee. During the trial evidence was adduced that all the assets of the San Francisco Dairy Company had been acquired by the Dairy Delivery Company, which acknowledged that the San Francisco Dairy Company was merely a nonoperating subsidiary and constituted in effect merely a business name for the Dairy Delivery Company. The judgment was affirmed on appeal to the Supreme Court, which found also upon a review of the evidence that the San Francisco Dairy Company was the *alter ego* of the Dairy Delivery Company. When the plaintiff subsequently discovered that his judgment against the San Francisco Dairy Company was uncollectible due to lack of assets, he made a motion in the trial court for an order adding the name of Dairy Delivery Company to the judgment at a time when the statute of limitations had run in favor of that company, which motion was granted. Dairy Delivery Company thereupon moved for an order setting aside the order adding its name as a judgment debtor, and upon denial of this motion prosecuted an appeal. The court held the motion to add Dairy Delivery Company's name as a judgment debtor was properly granted, since it and the San Francisco Dairy Company were the same concern; "hence . . . the amendment did not add a new defendant to the judgment, but merely set forth the correct name of the real defendant. That a court may at any time amend its judgment so that the latter will properly designate the real defendants is not open to question." (*Mirabito* v. *San Francisco Dairy Co.*, 8 Cal.App.2d 54, 57 [47 P.2d 530].)

Appellant endeavors to distinguish the Mirabito case, in which the relations between the two corporations were established during the trial and an express finding of an *alter ego* relationship made, by pointing out that in the original trial of the case at bar (1) no testimony was offered to indicate the existence of any relationship between appellant and L. C. Roney, Inc., and (2) no finding was made in the original proceeding that L. C. Roney, Inc., was appellant's *alter ego*. There is nothing in the language or the logic of the Mirabito decision which would limit its application solely to a situation where the connection between the two corporations is developed in the original trial. The limitation contended for by appellant would fetter the court's ability to do justice

between the parties and award a premium to a litigant's capacity to conceal his real identity. The liberality with which a court permits amendments of judgments where the record itself clearly reflects a clerical error should apply equally to the use of extrinsic evidence to clarify the name of the real defendant. (See *Leviston* v. *Swan,* 33 Cal. 480, 484; *Boust* v. *Superior Court,* 162 Cal. 343, 345 [122 P. 956].)

■  Where a court may with propriety amend a judgment, evidence dehors the record is admissible, upon proper notice to the adversary party, in order to make the judgment speak the truth. (*Scamman* v. *Bonslett,* 118 Cal. 93, 97 [50 P. 272, 61 Am.St.Rep. 226]. See Freeman on Judgments (5th ed.), vol. 1, p. 939.) ■ Since the court had jurisdiction over the defendant, it had jurisdiction to make its judgment reflect the defendant's true name. (*Mirabito* v. *San Francisco Dairy Co.,* 8 Cal.App.2d 54, 59 [47 P.2d 530] ; *Brum* v. *Ivins,* 154 Cal. 17, 20 [96 P. 876, 129 Am.St.Rep. 137].) ■ A question having arisen as to the identity and character of the defendant upon whom the judgment was binding the court possessed the power to adopt a suitable procedure for the purpose of determining that question. (Code Civ. Proc., § 187.*) Under the authority of this section the court properly exercised its power by taking evidence, after proper notice, in order to determine the true name of defendant.

The question remaining for determination is whether the evidence taken at the hearing on the order to show cause supports the finding that the Southwestern Development Company was in fact the *alter ego* of L. C. Roney, Inc., and as such the real party who should be bound by the judgment irrespective of the name under which it was sued.

■  Where injustice would result from a strict adherence to the doctrine of separate corporate existence, a court will look behind the corporate structure to determine the identity of the party who should be charged with a corporation's liability. (*D. N. & E. Walter & Co.* v. *Zuckerman,* 214 Cal. 418, 420 [6 P.2d 251].) ■ Since the separate personality of a corporation is but a statutory privilege it must not be employed as a cloak for the evasion of obligations. ■ The

---

*Section 187 reads: "When jurisdiction is, by the constitution or this code, or by any other statute, conferred on a court or judicial officer, all the means necessary to carry it into effect are also given; and in the exercise of this jurisdiction, if the course of proceeding be not specifically pointed out by this code or the statute, any suitable process or mode of proceeding may be adopted which may appear most conformable to the spirit of this code."

conditions which must be present before the corporate veil will be pierced are outlined in *Minifie* v. *Rowley*, 187 Cal. 481, 487 [202 P. 673], where the court points out that before the obligations of a corporation can be regarded as those of another person, the following circumstances must appear: "First, that the corporation is not only influenced and governed by that person, but that there is such a unity of interest and ownership that the individuality, or separateness, of the said person and corporation has ceased; second, that the facts are such that an adherence to the fiction of the separate existence of the corporation would, under the particular circumstances, sanction a fraud or promote injustice." The second requirement suggested in *Minifie* v. *Rowley, supra,* is further refined in the following expression: ". . . where the recognition of the fiction of separate corporate existence would foster an injustice or further a fraud the courts will refuse to recognize it. (Citing cases.) It is not necessary that the plaintiff prove actual fraud. It is enough if the recognition of the two entities as separate would result in an injustice. (Citing cases.) Here confusion would be promoted and an unjust result be accomplished if the maintenance of the two entities controlled by the same persons and having an identical name were permitted to frustrate a meritorious claim." (*Gordon* v. *Aztec Brewing Co.*, 33 Cal. 2d 514, 522-523 [203 P.2d 522].)

The evidence adduced at the hearing of November 19, 1951, clearly established the following significant facts: The Southwestern Development Company was a family corporation which since 1946 owned the entire outstanding stock of L. C. Roney, Inc.; an interlocking directorate existed between L. C. Roney and Southwestern Development Company, and the officers of both were identical; that A. B. Ruddock, the president of both corporations and a member of the family which owned the Southwestern Development, was vested with a blanket authorization to take unilateral action that would bind the Southwestern Development Company; large sums of money were furnished L. C. Roney, Inc., by Southwestern Development Company without security and apparently without the formality of a resolution authorizing such loans; and both corporations had the same attorney, who handled the initial phases of this litigation, preparing the answer to plaintiff's complaint, which was verified by A. B. Ruddock. When the assets of L. C. Roney, Inc., were sold to Southwestern Development Company the former cor-

poration received no consideration other than the recited cancellation of debts allegedly owed to the parent corporation and the agreement to assume one particular obligation, and was left without assets and without the means of paying its debt to plaintiff. Following the shift of assets, the business of L. C. Roney, Inc., was carried on in identical fashion, with the same controlling personnel, using its former name as a fictitious firm style as a part of the operations of the Southwestern Development Company. These facts and circumstances furnish ample support for the finding of the trial court that defendant was but the *alter ego* of appellant corporation. There is substantial evidence of domination of defendant by appellant corporation. There is complete unity of ownership and interest. The testimony showing loans by Southwestern Development Company to L. C. Roney, Inc., without specific authorization by resolution of the directors of appellant corporation and in excess of the amount L. C. Roney, Inc., was authorized to borrow leads to a legitimate inference of some commingling of assets. Further, the attorney for both corporations was the same, and though the complaint was brought against L. C. Roney, Inc., the litigation was in effect carried through and subsidized by appellant corporation, which at all times was fully apprised and cognizant of plaintiff's claim and of the legal action it had taken against L. C. Roney, Inc. The collective weight of these facts clearly supports the finding that defendant corporation was merely an instrumentality through which appellant was transacting its own operations as a business convenience. ". . . corporations cannot escape liability by a mere change of name or shift of assets when and where it is shown that the new corporation is, in reality, but a continuation of the old." (*Blank* v. *Olcovich Shoe Corp.*, 20 Cal.App.2d 456, 461 [67 P.2d 376].) The foregoing recital contains all the elements requisite to the establishment of an *alter ego* relationship; control of one corporation by the other; the use of one corporation as an instrumentality or business conduit of the other; the promotion of an injustice through the preservation of the separate corporate identity. (See *Duarte* v. *Postal Union Life Ins. Co.*, 75 Cal.App.2d 557, 576 [171 P.2d 574].)

Appellant argues that no fraud has been perpetrated on plaintiff by the conveyance of all the assets of L. C. Roney, Inc., to appellant for a recited consideration which left L. C. Roney, Inc., insolvent at a time when plaintiff's obligation was outstanding, nor was plaintiff misled by appellant's con-

tinuation of the defendant's business under an identical fictitious name. It is unnecessary to decide whether this type of transaction or conduct constituted an actual or constructive fraud on plaintiff since an *alter ego* relationship may exist independent of fraudulent purpose. ▮ Where the recognition of the separate character of the entities would result in probable fraud, promote confusion or serve to accomplish an injustice, the law will strip a corporation of its separate existence (*Gordon* v. *Aztec Brewing Co., supra,* p. 523), and place responsibility on the party actually liable for the obligation through the application of the *alter ego* doctrine. (*Mirabito* v. *San Francisco Dairy Co.,* 8 Cal.App.2d 54 [47 P.2d 530].)

The order is affirmed.

Moore, P. J., and McComb, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied September 18, 1952. Edmonds, J., was of the opinion that the petition should be granted.